

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00380-CV

**IN THE INTEREST OF L.L.N-P.**, a Child

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2016-PA-01933
Honorable Richard Garcia, Judge Presiding

Opinion by:     Sandee Bryan Marion, Chief Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Rebeca C. Martinez, Justice
                Irene Rios, Justice

Delivered and Filed: November 21, 2018

AFFIRMED

S.P. appeals the trial court's order terminating his parental rights to his son, L.L.N-P.  S.P. challenges the legal and factual sufficiency of the evidence to support the trial court's predicate statutory findings and its finding that termination is in L.L.N-P.'s best interest.  We affirm the trial court's order.

## BACKGROUND

On September 1, 2016, the Texas Department of Family and Protective Services filed a petition to terminate S.P.'s parental rights to his son L.L.N-P.[1]  The petition was filed after the Department received a referral that L.L.N-P., who was born on August 20, 2016, tested positive

---

[1] The petition also sought to terminate the parental rights of L.L.N-P.'s mother who did not appeal the order terminating her parental rights.

for amphetamines at birth. L.L.N-P. was placed with his maternal grandmother upon his release from the hospital and has lived with his maternal grandmother during the entire pendency of the case.

A two-day bench trial was held on February 7, 2018, and May 16, 2018. At the conclusion of the trial, the trial court terminated S.P.'s parental rights. S.P. appeals.

## STANDARD OF REVIEW AND STATUTORY REQUIREMENTS

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. §§ 161.001, 161.206(a); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). In this case, the trial court found clear and convincing evidence of two predicate grounds and also found termination of S.P.'s parental rights was in the best interest of L.L.N-P.

We evaluate the legal and factual sufficiency of the evidence to support the trial court's findings under the standards of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256, 266-67 (Tex. 2002). Under these standards, "[t]he trial court is the sole judge of the weight and credibility of the evidence, including the testimony of the Department's witnesses." *In re F.M.*, No. 04-16-00516-CV, 2017 WL 393610, at *4 (Tex. App.—San Antonio Jan. 30, 2017, no pet.) (mem. op.).

## FAILURE TO COMPLY WITH COURT ORDER

As previously noted, the Department was only required to prove one of the predicate statutory grounds for termination. *In re A.V.*, 113 S.W.3d at 362. One of the predicate grounds the trial court found in support of termination was subsection 161.001(b)(1)(O) which permits a court to order the termination of parental rights if the parent has:

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

TEX. FAM. CODE ANN. § 161.001(b)(1)(O).

S.P. first contends the evidence is insufficient because "the court did not enter any specific order compelling S.P. to engage in the services set out in his service plan *after* acquiring jurisdiction over S.P." S.P. also contends he never signed the plan, the evidence is questionable as to whether he ever received a copy of the plan, and the caseworker testified she never reviewed the service plan with him. Finally, S.P. contends he proved the subsection 161.001(d) affirmative defense.

Section 263.101 of the Family Code requires the Department to file a service plan "not later than the 45th day after the date the court renders a temporary order appointing the [D]epartment as temporary managing conservator." TEX. FAM. CODE ANN. § 263.101. If the Department determines that the child's parents are unable or unwilling to participate in the development of the plan or to sign the plan, the Department may file the plan without the parents' signatures. *Id*. § 263.103(c). Finally, subsection 263.103(d)(2) of the Family Code provides the service plan takes effect when the trial court issues an order giving effect to the plan without the parents' signatures. *Id*. § 263.103(d)(2); *In re T.T.F.*, 331 S.W.3d 461, 478 (Tex. App.—Fort Worth 2010, no pet.) (holding filing of service plan without parent's signature did not violate parent's procedural due process rights).

A. Absence of S.P.'s Signature on Service Plan

In this case, the caseworker testified she was unable to review the service plan with S.P. after she prepared it and that S.P. was not in communication with her. In view of this testimony,

the Department must have determined that S.P. was unable or unwilling to participate in the development of the plan or to sign the plan, thereby allowing the Department to file the plan without his signature. *Id*. § 263.103(c). Accordingly, S.P.'s contention relating to his signature on the service plan is overruled.

B.      Timing of Court Order Giving Effect to Service Plan

The Department filed the service plan on October 7, 2016, and the trial court signed an order giving effect to the plan on November 1, 2016. S.P. argues the order was issued before he was served; however, S.P. does not cite any authority in support of his contention that the trial court was required to enter the order after he was served. *See* TEX. R. APP. P. 38.1(i) (providing brief must contain argument with appropriate citations to authorities). Because the plan is required to be filed within 45 days of the temporary orders appointing the Department as managing conservator and the trial court may sign an order giving effect to a plan without the parent's signatures, we conclude the Family Code contemplates such a possibility. Accordingly, S.P.'s complaint regarding the timing of the trial court's order is overruled.

C.      S.P.'s Receipt of Service Plan

With regard to S.P.'s receipt of the service plan, on the first day of trial, the caseworker testified she sent certified letters to S.P., but never received any replies. She also testified she attempted to visit S.P. while he was incarcerated, but the Comal County jail informed her that S.P. was transferred to the Medina County jail while the Medina County jail stated S.P. was in the Comal County jail. On the second day of trial, which was three months after the first day of trial, the caseworker testified she received a letter two weeks earlier from S.P. stating "he was finally able to put [her[ on the visitation list because, prior to that, [she] was not able to visit him because [she] wasn't on that list." However, the caseworker had not been able to visit S.P. since her receipt of the letter. When asked if she sent S.P. a copy of the service plan, the caseworker testified, "I

believe I did, yes." She was not sure when she sent him the plan, stating she and S.P. "exchanged letters since the inception of this case. He's wrote me maybe like five times, and I've responded."[2]

On the first day of trial, S.P. testified he never received any letters from the Department, and anytime he called the caseworker, his calls went to her voicemail. On the second day of trial, S.P. testified no one from the Department ever visited with him, but he wrote the Department and tried to remain in contact from the beginning. S.P. testified he never received the service plan. On cross-examination, S.P. testified he put the caseworker's name on his visitor list five or six months earlier and did not know the caseworker was only informed she was on the list two weeks earlier. S.P. admitted, however, that he was back and forth between the Comal County jail and Medina County jail dealing with charges in both counties.

Because the trial court is the sole judge of the witnesses' credibility, the trial court could have believed the caseworker and S.P. had corresponded on at least five occasions regarding the case. In addition, the trial court could have believed the caseworker's testimony that she sent S.P. a copy of the service plan. Accordingly, S.P.'s complaint relating to his receipt of the service plan is overruled.

---

[2] Although this testimony may appear to conflict with the caseworker's testimony on the first day of trial that S.P. had not replied to her correspondence, the letters sent by S.P. may not have referred to the caseworker's correspondence. In addition, the record reflects the caseworker testified by telephone on the first day of trial and was having difficulty with her notes regarding the case:

> Q (By Department's attorney) Ms. Munoz, can you share with the Court what the referral was that initiated this case.
> A Yes.
> Can you give me just one second?
> I'm sorry.
> Q Are you looking up your notes?
> A Yes.
> Q Okay. When you do that, could you please refresh your recollection from your notes, but at no point read directly from them as part of your testimony.
> Okay?
> A Yes, ma'am.
> Okay. I can't find it, but I know it was — we received a referral from substance abuse for — physical neglect and neglectful supervision. At the time of birth, [L.L.N-P.] was born for substance abuse. [sic]

D.     Review of Service Plan

In his brief, S.P. cites section 263.103(a-1) to assert the trial court erred in terminating his parental rights because the caseworker never reviewed the service plan with him.   Section 263.103(a-1) provides, "Before the original service plan is signed, the child's parents and the representative of the department shall discuss each term and condition of the plan."   TEX. FAM. CODE ANN. § 263.103(a-1).   In this case, however, the service plan was not signed but, as previously noted, was given effect by court order.   *Id.* § 263.103(d)(2).   Therefore, section 263.103(a-1) is not applicable.   In addition, S.P. testified regarding the unavailability of classes in the jail.   This testimony is evidence that S.P. was aware of at least some of the requirements of his service plan.

E.     Affirmative Defense

Finally, S.P. contends the trial court erred in terminating his parental rights because he established the affirmative defense set forth in subsection 161.001(d) of the Family Code.   *See id.* § 161.001(d).   Subsection 161.001(d) provides:

> A court may not order termination under Subsection (b)(1)(O) based on the failure by the parent to comply with a specific provision of a court order if a parent proves by a preponderance of the evidence that:
>
> (1) the parent was unable to comply with specific provisions of the court order; and
>
> (b) the parent made a good faith effort to comply with the order and the failure to comply with the order is not attributable to any fault of the parent.

*Id.*

In his brief, S.P. relies on his testimony that no services were offered by the Comal County jail.   This reliance disregards that S.P.'s incarceration is attributable to his fault in committing criminal offenses.   Before the Texas Legislature amended the Family Code to add the affirmative defense in subsection 161.001(d), Texas courts specifically held incarceration is not a legal excuse

- 6 -

or defense to a parent's failure to comply with a service plan order. *In re C.J.L.*, No. 01-17-00283-CV, 2017 WL 4366010, at *8 (Tex. App.—Houston [1st Dist.] Oct. 3, 2017, pet. denied) (mem. op.); *K.C. v. Tex. Dep't of Family & Protective Servs.*, No. 03-17-00184-CV, 2017 WL 3585255, at *2 (Tex. App.—Austin Aug. 17, 2017, no pet.) (mem. op.). By requiring a parent to prove the failure to comply with the court ordered service plan is not attributable to any fault of the parent, we believe the Texas Legislature did not intend to make the affirmative defense available to parents who are unable to complete service plans because they are incarcerated through their own fault. Accordingly, we hold the trial court did not err in finding S.P. did not prove the affirmative defense under subsection 161.001(d).

F. Conclusion

Based on our review of the entire record, we hold the evidence is legally and factually sufficient to support the termination of S.P.'s parental rights under subsection 161.001(b)(1)(O). Because the evidence is sufficient to support termination under subsection 161.001(b)(1)(O), we need not address the other statutory ground for termination that S.P. challenges on appeal. *See In re A.V.*, 113 S.W.3d at 362; TEX. R. APP. P. 47.1.

**BEST INTEREST FINDING**

In determining the best interest of a child, courts apply the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors include: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody of the child; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(9) any excuse for the acts or omissions of the parent. *Id.* The foregoing factors are not exhaustive, and "[t]he absence of evidence about some of [the factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest." *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "A trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

L.L.N-P. is too young to express his desires, but he is bonded with his maternal grandmother who has provided his only home. *See In re S.R.*, 452 S.W.3d 351, 369 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ("When children are too young to express their desires, the factfinder may consider whether the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent."). S.P. has been incarcerated since L.L.N-P. was two months old and has a theft charge still pending against him for which he could be sentenced up to two years in a state jail facility. *See id.* at 370 (relying on periods of parent's incarceration while proceedings were pending as evidence to support best interest finding). Because of his incarceration, S.P. has not engaged in any services and has no bond with L.L.N-P. Furthermore, because of his incarceration, S.P. cannot provide for any of L.L.N-P.'s needs.

Having reviewed the record, we hold the evidence is sufficient to support the trial court's finding that termination of S.P.'s parental rights was in L.L.N-P.'s best interest.

CONCLUSION

The order of the trial court is affirmed.

Sandee Bryan Marion, Chief Justice